IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:10-CV-95-D

| | |
|---|---|
| BRUCE DEAR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **ORDER** |

Bruce Dear ("plaintiff" or "claimant") appeals the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability benefits ("benefits"). Each party has filed a motion for judgment on the pleadings [D.E. 11, 15]. As explained below, the court grants the Commissioner's motion for judgment on the pleadings, denies plaintiff's motion, and affirms the final decision of the Commissioner.

I.

Plaintiff applied for benefits on August 17, 2005, alleging a disability onset date of April 1, 2004. R. at 13; see id. at 86. His application was denied initially, and again upon reconsideration, and a request for hearing was timely filed. Id. at 13, 44, 47–49, 51–54. On June 13, 2008, a hearing was held before an Administrative Law Judge ("ALJ"). Id. 542–75.

On September 4, 2008, the ALJ found plaintiff not disabled and denied his application for benefits. Id. at 13–23. Plaintiff timely requested review by the Appeals Council. Id. at 9. The Appeals Council denied the request for review. Id. at 3–5. Plaintiff commenced this proceeding on July 16, 2010 [D.E. 1]. See 42 U.S.C. § 405(g).

II.

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). The regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled. Essentially, this process requires the ALJ to consider whether a claimant (1) is engaged in substantial gainful employment; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) possesses the residual functional capacity ("RFC") to return to his past relevant work; and (5) if not, whether he can perform other work in light of his age, education, work experience, and RFC. See 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See, e.g., Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Pass, 65 F.3d at 1203.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that plaintiff had engaged in substantial gainful activity since the alleged onset date of April 1, 2004, specifically in 2004 and 2006 to 2008. R. at 15–16 ¶ 2. Plaintiff's earnings in 2005 were below the substantial gainful activity level; therefore, the ALJ applied the remaining steps in the sequential evaluation. Id. at 16. At step two, the ALJ found that plaintiff had the following medically determinable impairments which were severe within the meaning of the Regulations, 20 C.F.R. § 404.1520(c): diabetes mellitus, coronary artery disease, degenerative joint disease of the knee, an affective disorder, and attention deficit hyperactivity disorder. Id. at 16 ¶ 3. At step three, however, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listed

2

impairments. Id. at 16 ¶ 4.

The ALJ determined that plaintiff had the RFC to perform work at the medium exertional level with postural, manipulative, environmental, and mental restrictions.[1] Id. at 17 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff could not perform any past relevant work. Id. at 22 ¶ 6.

At step five, the ALJ found that there are jobs in significant numbers in the national economy that plaintiff could perform, including laundry laborer, grocery bagger, and machine packager.[2] Id. at 22–23 ¶¶ 10. In making this determination, the ALJ adopted the opinion of a vocational expert who testified at the hearing. Id. at 23 ¶ 10. The ALJ accordingly found plaintiff not disabled during the relevant period. Id. at 23 ¶ 11.

III.

In reviewing the parties' cross-motions for judgment on the pleadings, the court "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Under the substantial evidence standard, the court may not "undertake to re-weigh conflicting

---

[1] Specifically, the ALJ found that plaintiff can stand and walk for up to 6 hours in an 8-hour day and lift 50 pounds occasionally and 25 pounds frequently; should avoid tasks requiring constant handling or fingering, balancing, climbing, or working at unprotected heights, near dangerous machinery, and in environments having respiratory irritants such as dust, fumes, and smoke; and can perform only simple, routine, and repetitive tasks due to a decreased ability to concentrate on and attend to work tasks. R. at 17.

[2] The ALJ's decision misstates the Dictionary of Occupational Titles ("DOT") code provided by the vocational expert for machine packager as 699.866-01<u>6</u>. R. at 23 (emphasis added). The vocational expert cited code 699.866-01<u>0</u>. Id. at 568 (emphasis added).

3

evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Craig, 76 F.3d at 589. Before the court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. See, e.g., Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439–40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

Plaintiff contends that the ALJ's decision should be reversed because the ALJ: (1) gave inadequate weight to the opinions of several providers in determining his RFC; (2) did not include in his hypothetical to the vocational expert all significant nonexertional impairments; and (3) did not recognize plaintiff's need to take unscheduled breaks every two hours to test his blood glucose. See Pl. Mem. Supp. Mot. J. Plead. 4–7. The court examines each argument seriatim.

A.

The principles governing plaintiff's argument concerning the weight given the opinions at issue are well defined. Opinions of physicians and psychologists who have treated a claimant are generally accorded more weight than the opinions of such providers lacking a treatment relationship. 20 C.F.R. § 404.1527(d)(2). After all, the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of . . . [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. Indeed, the Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not

4

inconsistent with the other substantial evidence in the record. Id.; see Craig, 76 F.3d at 590; Ward v. Chater, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). But "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." Soc. Sec. R. 96-2p, 1996 WL 374188, at *2. Indeed, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590; Gray v. Astrue, Civ. Act. No. CBD-10-1304, 2011 WL 2912789, at *3 (D. Md. July 15, 2011) (quoting Craig).

When the medical opinions of the treating source are not given controlling weight, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including: the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, and any specialization of the provider. 20 C.F.R. § 404.1527(d)(2)-(6). An ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5.

Similarly, the opinions of psychologists and physicians who examine a claimant are generally entitled to more weight than those of such providers who did not perform an examination. See 20 C.F.R. § 404.1527(d)(1), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (July 2, 1996). The weight ultimately attributed to medical opinions of nonexamining sources depends on the same factors, to the extent applicable, used to evaluate the medical opinions of treating sources. 20 C.F.R. § 404.1527(f). In addition, if applicable, the status of the nonexamining source (such as a state

5

agency medical consultant or medical expert used by the Commissioner) is to be considered. Id. Unless the treating source's medical opinions are given controlling weight, the ALJ must explain in his decision the weight given to the opinions of nonexamining sources as he must do for treating source opinions. 20 C.F.R. § 404.1527(f)(2)(ii).

The same factors used to determine the weight to be accorded the opinions of psychologists and physicians, who are so-called "acceptable medical sources," apply to the opinions of providers who are deemed to be at a different professional level, so-called "other sources," such as psychiatric nurses. See Soc. Sec. R. 06-03p, 2006 WL 2329939, at *4-*5 (Aug. 9, 2006); see also 20 C.F.R. § 404.1527(d). As with opinions from psychologists and physicians, the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Soc. Sec. R. 06-03p, 2006 WL 2329939, at *6.

Psychiatrist James A. Smith III, M.D., treated plaintiff for a depressive disorder from December 2004 through the date of the ALJ's decision. R. at 19 ¶ 5. In a medical source statement dated May 20, 2008, id. at 127–31, Dr. Smith found that plaintiff had moderate to marked limitations in a range of specific mental abilities required for work, including marked limitation in his ability to deal with the stress of semi-skilled and skilled work. Id. at 129 ¶ 9.i. He also found that, on average, plaintiff's impairments or treatment would cause him to be absent from work more than three times a month. Id. at 128 ¶ 8. As to functional limitations, the ALJ determined plaintiff to have moderate restrictions of activities of daily living, marked difficulties in maintaining social functioning, frequent deficiencies of concentration, persistence, or pace, and one or two episodes of decompensation. Id. at 130 ¶ 11. The ALJ stated that he gave little weight to Dr. Smith's

6

opinions. Id. at 21 ¶ 5. Plaintiff contends that the ALJ erred in doing so because of Dr. Smith's status as a treating source.

The court disagrees. The ALJ explained that "[Dr. Smith's] assessment is not supported by the medical and other evidence and, in fact, it is contradicted by the record." Id. at 21. The ALJ then gave four specific reasons for this determination. First, "the medical records, including Dr. Smith's own treatment notes, show that the claimant does not have persistent abnormalities on mental status examinations." Id. at 21 ¶ 5. Evidence supporting this finding include notes by Dr. Smith between August 2005 and March 2008 describing plaintiff as "euthymic" (i.e., characterized by moderation of mood, which is neither depressed nor manic) and as having other positive mental attributes, such as appropriate affect. See id. at, e.g., 132–53, 199–200, 203–04, 241–42. Second, "[claimant's] condition has been responsive to medication." Id. at 21 ¶ 5. Dr. Smith's treatment notes between January and November 2007 support for this finding. Id. at 136 ("He is stable on his meds.") (Nov. 2007); 138 ("He remains stable on his . . . antidepressant.") (Sept. 2007); 144 ("He is doing well on his current meds.") (Jan. 2007). Third, the ALJ stated that plaintiff's "GAF [Global Assessment of Functioning] ratings show only moderate impairment in function." Id. at 21 ¶ 5. GAF scores for plaintiff between August 2005 and March 2008 that ranged from 55 to 65 but were predominantly at 60 [3] support this determination. See id. at 133, 135, 137, 139, 141, 143, 145, 149, 206, 208, 210. Fourth, the ALJ reasoned that plaintiff's employment at Home Depot as a part-time electrical assistant from March 2006 through the date of the hearing shows that he "is able to interact with others during the course of his workday and he is required to sustain concentration, persistence, and

---

[3] A GAF score of 55 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning and a score of 65 only some mild symptoms or some difficulty in social, occupational, or school functioning. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, DSM-IV-TR 34 (4th ed. text rev. 2000).

7

pace in order to keep his job." Id. at 21; see id. at 546 (plaintiff's hearing testimony confirming employment at Home Depot). This determination finds support in Dr. Smith's September 2007 note stating that plaintiff had not had any "challenges on the job" and plaintiff's wife's statement that "change is not very discernable" in plaintiff's social interactions, which she described as "minimal" prior to the alleged onset of disability. Id. at 123, 138. In sum, the ALJ adequately justified giving little weight to Dr. Smith's opinions, and the ALJ's reasons are supported by substantial evidence.

As for psychiatric nurse Susan Simon, R.N., M.S.N., C.S., she treated plaintiff from April 2005 until at least October 2005. Id. at 463. In an assessment dated October 3, 2005, she found that plaintiff has "impairments that affect his memory and ability to sustain concentration and focus on accomplishing tasks in a timely manner." Id. She also found that plaintiff's depression "continues to be resistive to the medications that have been tried so far." Id. In addition, she stated that plaintiff has social difficulties in work-related settings. Id. The ALJ stated that he rejected Nurse Simon's opinions for the same reasons that he gave Dr. Smith's opinions little weight. Id. at 21 ¶ 5.

The court finds the ALJ's reasons and the underlying evidence sufficient to justify the ALJ's rejection of Nurse Simon's opinions. In particular, plaintiff's employment at Home Depot and the medical evidence rebut the notion that plaintiff could not concentrate sufficiently to work. Moreover, the ALJ has limited plaintiff to simple, routine, and repetitive tasks to address his limitations on concentration, persistence, and pace. See id. at 17; see also id. at 567, 572.

The ALJ also gave little weight to the evaluation of consultative psychologist Ernest Akpaka, Ph.D., who performed a one-time examination of plaintiff on March 16, 2006. Id. at 156–60. Dr. Akpaka found, among other things, that plaintiff is significantly limited in his ability to perform tasks requiring sustained concentration and persistence and to manage stress in the workplace. Id.

8

at 160. Plaintiff contends that the ALJ erred by not giving more weight to the opinions of Dr. Akpaka because he is an examining source.

Again, the court disagrees. The ALJ explained that he gave Dr. Akpaka's opinions little weight because they were "based on a one-time examination of the claimant and do[] not reflect the longitudinal history." Id. at 21 ¶ 5. As indicated, 20 C.F.R. § 404.1527(d)(1) recognizes that opinions of examining sources are generally entitled to less weight than opinions of treating sources. The court interprets the ALJ's reference to the longitudinal history to be an allusion to the same reasons he cites as undermining the opinions of Dr. Smith—namely, plaintiff's lack of persistent abnormalities on mental status exams, the responsiveness of his condition to medication, his GAF scores, and his employment at Home Depot. As with Dr. Smith's opinions, these reasons are sufficient to justify the ALJ's evaluation of Dr. Akpaka's opinions and are supported by substantial evidence. Indeed, Dr. Akpaka's central opinions—that plaintiff has significant limitations in maintaining concentration and persistence, and in managing workplace stress—parallel similar findings by Dr. Smith.

Finally, the ALJ adequately explained why he gave greater weight to the opinions of state agency consultants who did not examine plaintiff. R. at 21. Although the opinions of nonexamining sources are generally entitled to less weight than those of treating and other examining sources, the ALJ lawfully gave the opinions greater weight because, as the ALJ found after summarizing these opinions, they "are consistent with the longitudinal medical record." Id.; 20 C.F.R. § 404.1527(d)(4), (f); see Gray, 2011 WL 2912789, at *6 (upholding ALJ's assignment of greater weight to the opinions of consultative nonexamining physicians that plaintiff was not disabled and discounting of the contrary opinions of plaintiff's treating physicians).

9

In sum, plaintiff's challenge to the weight the ALJ accorded the opinions discussed fails. Because this challenge underlies his contention that the ALJ's RFC determination was improper, that contention fails as well.

B.

Plaintiff also contends that the ALJ failed to include all of plaintiff's limitations in the hypothetical he posed to the vocational expert. Pl. Mem. Supp. Mot. J. Plead. 7. To be helpful, the VE's opinion must be "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005). The vocational expert must accept as true the RFC as determined by the ALJ. Hines v. Barnhart, 453 F.3d 559, 566 n.5 (4th Cir. 2006).

Here, the hypothetical the ALJ gave the vocational expert included the same RFC he determined plaintiff to have with the exception of one limitation whose omission plaintiff has not challenged in this appeal.[4] Nonetheless, plaintiff argues that the hypothetical should have included the limitation that plaintiff is significantly hindered in his ability to handle workplace stress, as found by Dr. Smith and Dr. Akpaka. Pl. Mem. Supp. Mot. J. Plead. 7. But the court has already found that the ALJ's determination to give these opinions of Dr. Smith and Dr. Akpaka little weight is supported by substantial evidence and otherwise lawful. Accordingly, the ALJ's hypothetical to ALJ the vocational expert was legally proper.

---

[4] The limitation in the RFC that the ALJ omitted from the hypothetical was that plaintiff avoid working in environments with respiratory irritants. R. at 17, 567–68. It is not apparent that this limitation would apply to any of the jobs the vocational expert identified as available to plaintiff. In any event, plaintiff did not challenge this omission as part of this appeal.

10

C.

Finally, plaintiff challenges the ALJ's finding that plaintiff, as a diabetic, could work even if he had to take unscheduled breaks lasting ordinarily 10 minutes potentially up to 20 minutes every two hours to test his blood glucose. Pl. Mem. Supp. Mot. J. Plead. 7. Plaintiff relies on the vocational expert's testimony to support his contention. However, the vocational expert testified that for unskilled jobs, including the jobs she said were available to plaintiff, workers typically received a morning and afternoon break of about 15 minutes each plus a lunch break. Id. at 569–70. A few unscheduled breaks of a few minutes for trips to the restroom and comparable purposes are also generally allowed. Id. at 570. Thus, the ALJ did not err in finding that these arrangements are sufficient to accommodate plaintiff's blood-testing regimen. Furthermore, plaintiff's claim that his blood testing can take up to 20 minutes is not corroborated by medical evidence. Accordingly, the court rejects plaintiff's final challenge to the ALJ's decision.

IV.

The ALJ applied the proper legal standards and substantial evidence supports the decision. Accordingly, the Commissioner's motion for judgment on the pleadings [D.E. 15] is GRANTED, plaintiff's motion for judgment on the pleadings [D.E. 11] is DENIED, and the final decision of the Commissioner is AFFIRMED.

SO ORDERED. This 20 day of September 2011.

JAMES C. DEVER III
United States District Judge

11